JP:NS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

M12-0022

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

TERREL TOMPKINS,

        Defendant.

C O M P L A I N T

(21 U.S.C. § 841)

- - - - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

        JAMES LEE, being duly sworn, deposes and states that he is a Special Agent with the Drug Enforcement Administration ("DEA"), duly appointed according to law and acting as such.

        Upon information and belief, on or about and between December 8, 2011 and January 9, 2012, both dates being approximate and inclusive, within the Eastern District of New York, the defendant TERREL TOMPKINS, together with others, did knowingly and intentionally possess with intent to distribute a controlled substance, which offense involved 100 grams or more of a substance containing heroin, a Schedule I controlled substance).

        (Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B))

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I have been a Special Agent with the DEA for approximately seven years. My information in this case comes from a review of DEA records and my direct participation in the investigation.

2. In or about late November 2011, I was informed by a confidential informant ("CI") about a drug dealer the CI knew as "T".[2] According to the CI, "T" told the CI that he could provide the CI with heroin and the CI and "T" discussed prices.

3. On or about December 8, 2011, the CI made five recorded calls to "T", who was later identified as the defendant, TERREL TOMPKINS. During these calls, the defendant agreed to sell 28 grams of heroin to the CI and the defendant and the CI agreed to meet later that day at a restaurant in Queens, New York called "Kennedy Chicken" for this purpose. On the afternoon of December 8, 2011, DEA agents provided the CI with $1,900 to purchase approximately 28 grams of heroin from the defendant and provided the CI with an audio transmitting device and an audio recording device. At approximately 4:12 p.m. on December 8,

---

[1] Because the purpose of this Complaint is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

[2] The CI is a paid informant and has been proven reliable in previous investigations.

2

2011, DEA agents observed the CI walk into the "Kennedy Chicken" restaurant. Once inside, the defendant gave the CI a small package consisting of brown powder wrapped in plastic wrap in exchange for $1,820. This package was subsequently sent for testing at the DEA Northeast Laboratory. The brown powder tested positive for the presence of heroin and had a net weight of 28 grams.

    4.    At approximately 2:57 p.m. on December 13, 2011, the CI telephoned the defendant. This phone call was recorded by DEA agents. During the phone call, in sum and substance, the CI asked the defendant about the price of "crack" cocaine and asked about getting a sample of heroin because he was not satisfied with the quality of the heroin previously provided by the defendant on or about December 8, 2011. The defendant told the CI, in sum and substance, that he would call him back regarding the price for "crack" cocaine and indicated he could provide the CI with a heroin sample. A few minutes later, at approximately 3:01 p.m., the defendant called the CI back. DEA agents recorded this phone call. During this second phone call, the defendant told the CI, in sum and substance, he could sell the CI "crack" cocaine for $39 per gram. The CI agreed to purchase 35 grams of "crack" cocaine from the defendant. Ultimately, however, in the days that followed, the CI informed the defendant that he was not able to purchase the "crack" cocaine.

5.      At approximately 5:42 p.m. on December 19, 2011, DEA agents recorded another telephone conversation between the defendant and the CI. During this conversation, the defendant agreed to meet the CI approximately 10 minutes later outside the "Kennedy Chicken" restaurant in Queens, New York, whereupon the defendant would provide the CI with a heroin sample. After the phone call, DEA agents provided the CI with an audio transmitting device and an audio recording device.

6.      At approximately 5:48 p.m. on December 19, 2011, DEA agents observed the CI arrive at the northeast corner of 37th Avenue and Junction Boulevard in Queens, New York, and stand in front of the "Kennedy Chicken" restaurant. At approximately 5:55 p.m., DEA agents observed the CI walk eastbound on 37th Avenue toward 97th Street, whereupon the CI met with the defendant and appeared to engage in a conversation with the defendant. During this conversation, the defendant provided the CI with a glassine bag containing a brownish/greyish powder and told the CI, in sum and substance, that this sample "should be better." The defendant also told the CI that he had police vests for sale for $500 per vest. The defendant indicated that he had one police vest available now and could get five others. The glassine bag containing the brownish/greyish powder was subsequently sent to the DEA Northeast Laboratory. The powder tested positive for the

presence of heroin and had a net weight of approximately 0.31 grams.

   7. At approximately 3:10 p.m. on Friday, January 6, 2012, the CI called the defendant. DEA agents recorded this phone call. During this phone call, the CI told the defendant he wanted to purchase "a yard" - 100 grams - of heroin on Sunday or Monday. The defendant stated, in sum and substance, that this would not be a problem and to "hit [him] up."

   8. At approximately 1:30 p.m. on January 8, 2012, the CI telephoned the defendant and recorded this phone call. During this call, the CI told the defendant, in sum and substance, that he wanted to purchase one police vest and that he wanted the heroin "50/50" - *i.e.*, the 100 grams should be split in two. The defendant told the CI, in sum and substance, that he would get these items for him the next day, in the early afternoon.

   9. At approximately 2:27 p.m. on January 9, 2012, the CI telephoned the defendant. DEA agents recorded this phone call. During the call, the CI told the defendant, in sum and substance, that he would call the defendant back in 20 minutes. The defendant stated, in sum and substance, that he would bring the police vest hidden in other clothes.

   10. At approximately 3:25 p.m. on January 9, 2012, the CI telephoned the defendant again. DEA agents recorded this

phone call. During the call, the CI told the defendant to meet him at a restaurant called "Pachas" on the northwest corner of 94th Street and 37th Avenue in Queens, New York. After the phone call, DEA agents provided the CI with an audio transmitting device and an audio recording device and observed him enter "Pachas" restaurant in Queens, New York and sit at a table.

11. At approximately 3:32 p.m. on January 9, 2012, DEA agents observed the defendant, holding a bag, enter "Pachas" restaurant in Queens, New York and sit down at a table with the CI. DEA agents observed the defendant place the bag he was holding under the table. DEA agents next observed the CI walk to the bathroom and then exit the bathroom a few minutes later and return to the table. DEA agents then observed the CI sit down at the table and take off his baseball cap. At that point, DEA agents approached the table and arrested the defendant. The CI subsequently handed a DEA agent a ziplock bag containing two packages filled with a brownish powder, which the defendant had given the CI while they were seated at the table in "Pachas" restaurant. This brownish powder field tested positive for the presence of heroin and had a total gross weight of approximately 125.6 grams.

11. Following the defendant's arrest, DEA agents read the defendant his <u>Miranda</u> rights, which he appeared to understand and waived. The defendant told DEA agents, in substance and in

part, that (1) he sold the CI heroin on December 8, 2011, which he had "cut up"; (2) he provided a sample of heroin to the CI on December 19, 2011, which was of better quality; and (3) that he provided the CI with 100 grams of heroin on January 9, 2012, split up "50/50" and was planning to charge the CI $6,500 for the heroin, but would have provided the CI with a discount, if the CI had asked for one.

WHEREFORE, your deponent respectfully requests that the defendant TERREL TOMPKINS be dealt with according to law.

_____
JAMES LEE
Special Agent,
Drug Enforcement Administration

Sworn to before me this
10th day of January, 2012

;E